**WYCON CONSTRUCTION COMPANY, a corporation, Plaintiff–Appellant,**

v.

**WHEAT RIDGE SANITATION DIS-TRICT, a quasi-municipal corporation, Defendant–Appellee.**

**No. 92CA0137.**

Colorado Court of Appeals, Div. IV.

April 8, 1993.

As Modified on Denial of Rehearing Sept. 9, 1993.

Certiorari Denied March 21, 1994.

Boatright and Ripp, Gerald E. Boatright, Wheat Ridge, for plaintiff-appellant.

Barry A. Hudson, Thomas P. Quinn, Wheat Ridge, for defendant-appellee.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Opinion by Judge PLANK.

Plaintiff, Wycon Construction Company (Wycon), appeals from a judgment entered against it and in favor of the defendant, Wheat Ridge Sanitation District (District), on Wycon's claim for declaratory relief. We reverse.

Wycon's principal business activity is the installation of underground facilities such as water lines, storm drains, and sewer lines. Wycon has worked, and is likely to continue to do work, for the Wheat Ridge Water District, often involving areas of Wheat Ridge serviced by the Sanitation District.

Wycon claims, but the District disputes, that up until 1990, the District would locate and mark the main sewer lines, taps, and individual service lines when requested to do so by Wycon prior to excavation of a public thoroughfare. It is undisputed that after 1990, the District did not locate the individual service lines and currently will only mark the main sewer line and the location of the taps into the individual service lines located along the main sewer line.

Wycon claims that because of the District's refusal to mark the individual service lines in the public thoroughfare, it now often damages such lines.

■ Wycon contends that the trial court erred as a matter of law by finding that the District has no duty to mark individual service lines in the public thoroughfare. We agree.

The purpose of the Excavation Requirements Article, § 9–1.5–101, et seq., C.R.S. (1986 Repl.Vol. 3B), "is to prevent injury to persons and damages to property from accidents resulting from damage to underground facilities by excavation." "'Underground facility' means any item of personal property which is buried or placed below ground for use in connection with the storage or conveyance of ... sewage...." Section 9–1.5–102(7), C.R.S. (1986 Repl.Vol. 3B). Section 9–1.5–102(5), C.R.S. (1986 Repl.Vol. 3B) defines an owner or operator as, "any person, including ... political subdivisions ... or other persons having the right to bury underground facilities in or near a public road,

street, alley, right of way, or utility easement."

Sections 9–1.5–103(3) and 9–1.5–103(4), C.R.S. (1983 Repl.Vol. 3B) require that Wycon give notice to all owners or operators of underground facilities before beginning any excavation work and requires that any owner or operator mark the location of the facilities.

The District admits that it is an operator of the main sewer line and of the individual taps into the main line. It denies, however, that it is an operator of the individual sewer lines.

■ The appropriate construction of a statute is a question of law. *People v. Terry,* 791 P.2d 374 (Colo.1990).

■ A court must construe a statute to determine the intent of the General Assembly. *Kern v. Gebhardt,* 746 P.2d 1340 (Colo. 1987). If a statute is unambiguous, it is improper to go beyond the accepted meaning of the words in the act. *City & County of Denver v. Howard,* 622 P.2d 568 (Colo.1981). As well, if the language of the statute is plain, its meaning clear, and no absurdity results, a court should never strain an interpretation beyond the common meaning. *Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991).

■ If, however, a statute is ambiguous, a court must determine what the General Assembly intended. *McNichols v. City & County of Denver,* 120 Colo. 380, 209 P.2d 910 (1949). We always assume that the General Assembly intends a just and reasonable result. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984).

Under this statute, it appears that both the District and individual property owners can fit into the definition of an "owner" or "operator" of underground facilities. Property owners are responsible for the maintenance of their own service lines and must get permission from the City to bury their service lines within a public thoroughfare. They must also, however, get permission from the District to tap into the main sewer line and can tap into the line only where the District permits them.

The District argues that the individual service lines are not necessary attachments to

its main line. While one such line may not be necessary, the whole purpose of placing a main line in a thoroughfare is so that all individual property owners can tap into it. Without individual service lines, there would be no need for a main line.

We hold that a reasonable interpretation of the statute requires that the District mark the individual service lines within the public thoroughfare. It is difficult to comprehend that the General Assembly could have intended that individual property owners, without any specialized knowledge or equipment, would have to mark the route through the public thoroughfare to where their service lines attach to the main.

As well, the statute requires the excavator to give two days notice to owners and operators before beginning excavation. First, it would be difficult for the excavator to identify all private property owners, and second, two days notice would likely be an inadequate amount of time for most property owners to locate and mark their lines.

Hence, the judgment is reversed, and the cause is remanded with directions to enter judgment consistent with this opinion.

JONES and MARQUEZ, JJ., concur.